UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JERMAINE WRIGHT,

                            Plaintiff,

                                                    DECISION AND ORDER

                                                    05-CV-6723L

            v.

SUPERINTENDENT JAMES CONWAY,
et al.,

                            Defendants.
_____

        Plaintiff, Jermaine Wright ("Wright"), a prisoner in the custody of the New York State

Department of Correctional Services ("DOCS") confined at the Attica Correctional Facility,

commended this civil rights action, *pro se*.  The claims mostly stem from an incident that

occurred on April 15, 2004 at the Attica facility.  Wright's principal claim is that four defendants,

Correction Officers Donald Hunter, Shawn McIntyre, John Jones and K. Berbary, used excessive

force against him, thus violating Wright's Eighth Amendment rights.

        Wright also alleges that defendants B. Frisby, R. Magee, David E. Nicosia, Laskowski, J.

Alves and J. Northup violated his rights under the Eighth Amendment by acting with deliberate

indifference to his medical needs.  In addition, Wright asserts due process and equal protection

claims, based on the conduct of the disciplinary hearings that were held relative to Wright's

actions on April 15, 2004.

Defendants move for summary judgment in their favor as to all claims except for the claims against Hunter, McIntyre, Jones and  Berbary alleging a violation of the Eighth Amendment for use of excessive force.  The motion for summary judgment is granted as to plaintiff's claims relating to deliberate indifference to his medical needs and the due process and equal protections claims, and those claims are dismissed.

## I. Medical "Deliberate Indifference" Claims

To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to a serious medical need."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A medical need is "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)).  *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'") (quoting *Chance*, 143 F.3d at 702).

The Supreme Court has explained that the "deliberate indifference" component includes both an objective and a subjective prong.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).  With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights.  With respect to the subjective element,

- 2 -

the court must consider whether the deprivation was brought about by defendants in wanton

disregard of those rights.  *Id.*  To establish deliberate indifference, then, plaintiff must prove that

the defendants *had a culpable state of mind and intended wantonly to inflict pain.  See id. at 299;*

*Anderson* v. Burge, 539 F.Supp .2d 684, 687 (W.D.N.Y. 2008).

    The Court in *Estelle* also cautioned that mere negligence is not actionable.  A prisoner's

complaint that a medical professional "has been negligent in diagnosing or treating a medical

condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

Medical malpractice does not become a constitutional violation merely because the victim is a

prisoner." *Estelle*, 429 U.S. at 106.  Rather, the plaintiff must allege conduct that is "repugnant

to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of

decency that mark the progress of a maturing society," *id.* at 105-06.  It is clear, then, that

allegations of negligence alone do not state a constitutional claim.  *Id.* at 106 n. 14; *Chance*, 143

F.3d at 703-04.

    In this case, Wright asserts claims relating to his medical treatment at Attica following the

April 15, 2004 incident, as well as the treatment he received at Southport Correctional Facility, to

which he was transferred in July 2004.  The evidence before me fails to support either claim,

however.

    After the incident and use of force on April 15, Wright was examined by Nurse David

Nicosia.  There were some minor cuts and some swelling and Wright was advised to apply a cold

compress and wash his hands.  Affidavits and medical records submitted in support of

defendants' motion indicate that Wright was uncooperative with medical staff at that time.  After

the incident, Wright apparently complained of headaches and was given Motrin and other analgesics.

After his arrival at Southport, Wright complained of chronic headaches, and claimed to have difficulty hearing.  An audiology consult was ordered and plaintiff was seen by an outside physician, John Serhan, on two different dates during August and September 2004.  Dr. Serhan concluded based upon his examination that Wright had functional hearing.

Wright also complained of headaches, for which he was given medication on several occasions.  It also appears that Wright only obtained one refill of his Naprosyn, which he had been directed to take for his headaches.  Apparently Wright insisted that he needed something stronger than Naprosyn.

In opposition to defendants' motion, Wright does not deny that he did receive medical care and treatment.  In essence, he simply disagrees with what was done for him.  *See* Plaintiff's Declaration (Dkt. #93) ¶¶ 5-30.  As explained above, that is not enough to give rise to a constitutional claim.

Even viewing the evidence in the light most favorable to plaintiff, it is clear that he was attended to and that his medical complaints were addressed.  Medical treatment was provided to him and there is no evidence to support a finding that any of the defendants ignored any serious medical need, or that they acted with the requisite state of mind.  Wright's complaints demonstrate no more than his personal dissatisfaction with the level of care that he received, and these claims must therefore be dismissed.  *See Sandlin v. Poole*, ___ F.Supp.2d ____, 2008 WL

4194864, at *4 (W.D.N.Y. 2008) (dismissing inmate's claim where plaintiff showed "mere disagreement with his treatment").

Furthermore, as to defendant Alves, it does not appear that he was personally involved in any of these matters.  In any claim under § 1983, the plaintiff must establish each defendant's personal involvement in the alleged constitutional deprivation in order to hold that defendant liable.  *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).

In the case at bar, Wright conceded at his deposition that he never talked to Dr. Alves directly about his medical complaints.  Dkt. #77 Ex. A at 43.  The only basis for his claim against Alves is that plaintiff wrote a letter to defendant Nurse Northrup, and her response made a reference to Dr. Alves.  *Id.* at 43-44.  That does not provide a basis for finding that Dr. Alves was personally involved in the events giving rise to plaintiff's deliberate-indifference claims.  *See Bumpus v. Canfield*, 495 F.Supp.2d 316, 322-23 (W.D.N.Y. 2007) (plaintiff's allegations that he "wrote ... several letters" to nurse administrator complaining about his perceived lack of medical attention, and that she did not respond, did not demonstrate nurse administrator's personal involvement with respect to Eighth Amendment medical claim).  For the reasons given above, then, all of the medical deliberate-indifference claims against defendants Frisby, Magee, Nicosia, Laskowski, Alves and Northrup must be, and hereby are, dismissed.

**II. Due Process/Equal Protection Claims**

A Tier III Hearing was held at Attica a few days after the April 15, 2004 incident involving plaintiff.  The hearing was conducted in front of Lt. Thomas Dixon.  Dixon found Wright guilty of the charges against plaintiff, which included violent conduct, creating a disturbance, assault on staff, and refusing a direct order, and imposed a penalty of 24 months in the Special Housing Unit ("SHU").  The sentence was modified on administrative appeal, to 15 months in SHU.

Wright then commenced an Article 78 petition, asserting that the hearing should be annulled.  On May 5, 2005, the New York Supreme Court, Wyoming County, issued an order stating that because there were significant gaps in the transcript of the hearing, a new hearing should be conducted.  Dkt. #77 Ex. B.

The rehearing was held at Southport in June 2005, before Hearing Officer James Esgrow. After the hearing, Esgrow found Wright guilty and imposed the same sentence as had been previously imposed by Lt. Dixon at Attica, 24 months in SHU.  That sentence was also modified on administrative appeal to 15 months.

Wright bases his due process claim on a number of grounds, including:  Dixon's refusal to allow introduction into evidence of the personnel records of Officer Hunter, and Dixon's limiting Wright's ability to question Hunter concerning other, prior incidents involving different inmates; Esgrow's refusal to allow Wright to read case law into the record at the rehearing, his ruling that plaintiff had received adequate legal assistance, and his alleged bias against Wright; the denial by Attica Superintendent Conway and by Southport Superintendent McGinnis of

plaintiff's requests for discretionary review of Dixon's and Esgrow's decisions, respectively; and

the decisions by SHU Director Donald Selsky and Assistant SHU Director Keith DuBray to

modify the penalties imposed on plaintiff by Dixon and Esgrow, rather than to reverse and

expunge the findings of guilt.

Inmates are entitled to certain basic due process safeguards, but those rights are not

coextensive with the procedural rights that one is entitled to in a criminal trial.  In general, an

inmate subject to a disciplinary hearing is entitled to:  "(1) advance written notice of the charges

against him, (2) the opportunity to call witnesses and present documentary evidence in his

defense and (3) a written statement of the evidence relied upon and the reasons for the

disciplinary action."  *Shell v. Brzezniak*, 365 F.Supp.2d 362, 376 (W.D.N.Y. 2005) (citing *Wolff

v. McDonnell*, 418 U.S. 539, 563-67 (1974)).

Based on those standards, I find no due process violations here.  With respect to the first

hearing at Attica before Lt. Dixon, the right of an inmate to call witnesses and to present

evidence is not absolute, and a prison hearing officer may exercise his "discretion to keep the

hearing within reasonable limits," *Wolff*, 418 U.S. at 566; *see, e.g., Russell v. Selsky*, 35 F.3d 55,

59 (2d Cir. 1994) (prison disciplinary hearing officer may refuse to allow even willing witnesses

to testify where their testimony would be unduly cumulative).  "Hearing officers may exercise

their discretion to exclude witness testimony or other evidence which is 'irrelevant or

unnecessary,'" *Marino v. Humphrey*, No. 05 Civ. 6571, 2006 WL 2786182, at *4 (S.D.N.Y.

Sept. 27, 2006) (quoting *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999)), and I

conclude that, in the absence of some indication that Hunter's personnel records or incidents

involving other inmates would be relevant to the charges against plaintiff, Lt. Dixon reasonably denied plaintiff's request to obtain or present such evidence.

As to plaintiff's claims against Esgrow, there is no objective evidence in the record to support such a claim.  The only "evidence" that Wright has presented in that regard is his own subjective belief that Esgrow was biased.  That is not enough to create a genuine issue of fact. *See Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) ("a plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment").

To the extent that plaintiff alleges that Dixon's and Esgrow's findings against him were not supported by the evidence, such claims must also be dismissed.  To withstand constitutional scrutiny,  "prison discipline decisions ... must be 'supported by some evidence in the record.'" *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004) (citing *Superintendent v. Hill*, 472 U.S. 445, 454, (1985)).  The "relevant question" in reviewing such decisions is "whether there is any evidence in the record that could support the conclusion reached" by the hearing officer. *Id.* (citing *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985)).  Having reviewed the transcript and record of Wright's disciplinary hearings, I conclude that the evidence more than meets that standard.

Wright also claims that two officers, Richard Latterrell and Bruce Herrick, who were assigned to assist him in connection with the rehearing, provided him with ineffective assistance. It is well established that "an inmate's right to assistance is limited."  *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993).  Certainly that right is not as extensive as the constitutional right to counsel enjoyed by criminal defendants. *See Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976)

(inmates do not have a right to retained or appointed counsel at "prison disciplinary hearings which are not part of a criminal prosecution").

Wright has failed to demonstrate any constitutional violation here.  The affidavits submitted by Officers Latterrell and  Herrick set forth in some detail the assistance that they did provide to Wright.  As with his medical claims, plaintiff is simply dissatisfied with that assistance.  It is clear, however, that these officers met with Wright and took numerous steps to comply with his requests.  Some of the information that plaintiff sought was obtained by them and submitted to the hearing officer, and reasonable explanations were given why certain other information had not been produced.  Based on the record before me, it is clear that Wright received constitutionally adequate assistance in order to prepare for the hearing.

Wright also alleges that Sharon Scott, who apparently transcribed the audiotape from the first disciplinary hearing, violated his due process and equal protection rights by failing to accurately transcribe the testimony at that hearing.  This claim is utterly conclusory and there is not a shred of evidence to support it.  This claim is therefore dismissed.

Wright's claims against defendants James Conway, Michael McGinnis, L. McNamara, Donald Selsky and Keith Dubray must likewise be dismissed.  The gist of Wright's claims against these individuals is that they erred in not reversing or vacating the disciplinary findings made against him.  Having found no due process violation relative to either the hearing conducted by Lt. Dixon or the hearing before Officer Esgrow, I likewise find no basis to conclude that the reviewing officers violated any of plaintiff's due process or equal protection rights either.

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #76) is granted.  All of plaintiff's claims against the following defendants are dismissed:  James Conway; Thomas Dixon; Michael McGinnis; Leslie McNamara; Richard Latterrell; Bruce Herrick; James Esgrow; Donald Selsky; Keith DuBray; Sharon Scott; Barbara  Frisby; Robert Magee; David Nicosia; Stephen Laskowski; John Alves; and Jill Northrop.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       November 5, 2008.

- 10 -